[L. A. No. 3798.   Department One.—December 12, 1914.]

In the Matter of the Estate of MARY M. BAKER, Deceased..

ESTATE OF DECEDENT—ADEMPTION OF LEGACIES—DELIVERY OF CERTIFI-
    CATE OF DEPOSIT.—Where a woman by her will gives each of the
    two nieces of her deceased husband five hundred dollars, and there-
    after delivers to them two certificates of deposit aggregating one
    thousand dollars, upon the condition expressed in her letters to the
    cashier of the bank and to the legatees that the principal of the
    certificates is not to be paid to them during her lifetime, but only
    the interest thereon, and that she is to have the certificates back if
    she needs them, the certificates are in ademption and satisfaction of
    the legacies.

APPEAL from a judgment of the Superior Court of Los Angeles County.   Lewis R. Works, Judge.

The facts are stated in the opinion of the court.

Gurney E. Newlin, and Roy V. Reppy, for Appellants.

Edward E. Leighton, for Respondent.

ANGELLOTTI, J.—This is an appeal by Marian Baker Sutton and Belle A. Baker, legatees under the last will of deceased, from the decree of final distribution in the matter of her estate, the court below having refused to award them therein any portion of the estate of deceased.   The ground of the court's action was that certain transactions had by deceased with said legatees operated as ademptions of their legacies.

By her will executed July 24, 1902, deceased gave to each of said appellants, who were nieces of her deceased husband, five hundred dollars. The will also provided for several other small legacies. Appellants resided in Boulder, Colorado. In February, 1911, the First National Bank of Palo Alto issued a certificate of deposit payable to the order of deceased for $408, with interest from February 8, 1911, at the rate of four per cent per annum if left for six months—no interest after maturity. On February 17, 1911, deceased wrote to Mr. M. A. Buchan, president of said bank, as follows: "Those nieces in Boulder have been ill and are all alone and nothing but their earnings to go for their support so I must try to help them if possible."

On July 8, 1911, deceased wrote a letter to appellants in which she said: "I have been thinking all the morning about you two dear girls and how hard you both have to struggle along if your expenses are anywhere as expensive as ours are and you have to work so hard. Well I wish I dare do for you as I have been thinking I would. I have a $400 certificate on the First National Bank of Palo Alto which I would sign over to you both to put in your bank as your own to draw interest in my lifetime or while I live, unless I go broke and have to have it back, and you never need tell any one about it or break it until after I pass away, then you would be sure of a little of your uncle's money. I would give you full instructions how you would do with the bank and tell Mr. Buchan, the president of the First National Bank, about it. Of course, I have mentioned you in my will. My money goes out so fast I often feel I may outlive it and if I do have to go to you and if it was not for Sister Adelia, I would any way and we would use what I have together."

On July 22, 1911, she wrote another letter to appellants, in which she made the following statement: "So in view of what may happen I am going to send you a piece of pink paper by name a certificate of the First National Bank of Palo Alto, Mr. M. A. Buchan, president and first cashier. It is at four per cent interest and has to be sent to the bank to be renewed every six months from the time of date. I will send it over to you . . . and rather than have you break or use any of it only the interest I would rather you would ask me for help some other way."

On July 24, 1911, deceased indorsed on the back of the certificate the following: "Mary M. Baker sign this certificate to Miss Belle Baker and Mrs. Marian Baker Sutton of Boulder, Colorado," and on the said date, or within a few days thereafter delivered the certificate thus indorsed to the appellants.

Mr. Buchan testified that he received from deceased a letter dated July 28, 1911, written by her, which informed him of the assignment of the four hundred and eight dollar certificate and in her letter she made the following condition: "That she was placing the certificate with her late husband's nieces, Marian Baker Sutton and Belle A. Baker, during her lifetime, to be renewed every six months as long as she should live unless she should get broke and need it, and they must not break the principal. That she wished to make sure of the small amount to be given Belle A. Baker and Marion Baker Sutton, her Boulder nieces, in case they should ever need it and that she had sent it to them together with directions how to proceed and that they should send it to M. A. Buchan for renewal."

At the expiration of the six months for which the four hundred and eight dollar certificate was made the same was sent to the bank by appellants for renewal, and a new certificate was issued by the bank in the place thereof for four hundred and eight dollars, dated August 8, 1911, which certificate recited that Marian Baker had deposited in the bank four hundred and eight dollars payable to the order of Belle A. Baker and Marian B. Sutton at the death of Mrs. Mary M. Baker and to be renewed every six months after date and to bear interest at the rate of four per cent per annum.

After the expiration of six months from August 8, 1911, a new certificate was issued in renewal, which last named certificate was paid to appellant some four months after the death of deceased.

Subsequently, the date not appearing, deceased wrote to Marian B. Sutton as follows: "I am thinking I will let you have a $600 certificate on the same agreement of the $400, not to use any of it which will make the $1000 I intend will be yours and Belle's after I am gone. No one will ever know anything about it only M. A. Buchan." On April 11, 1912, deceased wrote to Buchan the following: "I remember I had thought of sending this $600.00 to my Boulder nieces the same as I did the $400.00 and let them keep it my lifetime and draw

the interest unless I live long enough to need it. They must not draw the principal while I live, making them sure of the $1000.00 I intend they would have if they outlive me.'' On June 11, 1912, deceased again wrote to M. A. Buchan, saying: ''I am writing to ask a favor in regard to sending another certificate to my Boulder nieces. . . . I want to make them even $1000 on the same terms as the $400 certificates they already have as that amount is what I am intending they shall have if they outlive me, and if what I have of my own does not last me I am to have it back with the proviso: that if I do have that when I draw it they may draw an equal amount to use as they are a mind to.'' In response to the requests in these letters, Buchan on June 14, 1912, issued a certificate of deposit of said bank for six hundred dollars, the certificate reciting that Mrs. Baker has deposited in this bank six hundred dollars, payable to the order of Belle A. Baker and Mrs. Marian B. Sutton at the death of Mrs. Baker, with interest from May 29, 1912, at the rate of four per cent per annum.

On July 27, 1911, deceased executed a codicil to her will, appointing her nephew, Robert B. Emery, executor thereof, and revoking the appointment of P. H. Atkinson as executor made by the original will.

Deceased died July 11, 1912, being at that time of about the age of eighty-five years. The bank paid the amount of the six hundred dollar certificate to the appellants in December, 1912.

The lower court found that by the letters of the testatrix she expressed her intention that the certificates of deposit should be in ademption and satisfaction of the legacies to appellants, and that appellants are not entitled to any further moneys or properties of the estate.

Section 1351 of the Civil Code provides: ''Advancements or gifts are not to be taken as ademptions of general legacies, unless such intention is expressed by the testator in writing.'' The question in this case is whether such an intention is sufficiently expressed by the deceased in the writings to which we have referred.

We are of the opinion that this question must be answered in the affirmative. Of course, the requirements of section 1351 of the Civil Code, are satisfied if the intention there referred to is fairly shown by the writings of the deceased, taken in connection with the circumstances under which such writ-

ings were made. We have here a will by which appellants were given five hundred dollars each, or one thousand dollars in all, and various other small legacies were provided for. It is quite apparent from her letters, that deceased was continually in fear that she might exhaust the greater part of her property, if not all of it, before she died, and that she was very desirous that appellants should be preferred to all the other legatees in the event that the estate left by her was not sufficient in amount to pay all. She desired them to have as much as possible of the amount bequeathed, from the property left her by their uncle, if she did not require it for her own use during her own life. So she put the certificate of deposit for four hundred and eight dollars in appellants' possession, indorsed to them, with the condition expresssed and understood by all parties, including the bank, that the principal of the same should not be paid to them during her lifetime, but only the interest thereon, and that she was to have the certificate back if she needed it for her own expenses of living. The condition as to the payment of the principal was incorporated in each of the renewal certificates. Her idea, as expressed in her letter of July 8, 1911, to appellants, was that they would thus be "sure of a little of" their uncle's money, and, as expressed in her letter of July 28, 1911, to Mr. Buchan, that she wished "to make sure of the small amount to be given" to appellants. Taken alone, the evidence as to this transaction of the year 1911 relative to the four hundred and eight dollar certificate may not sufficiently show an intention that the amount to be received thereunder should be in satisfaction *pro tanto* of the legacies to appellants of five hundred dollars each, but when considered in connection with the evidence as to the later transaction in the year 1912, the intention as to both transactions is beyond serious question sufficiently shown. We think that under the circumstances it may properly be so considered. She wrote appellant Marian B. Sutton, "I am thinking I will let you have a $600 certificate on the same agreement of the $400, not to use any of it *which will make the $1000 I intend will be yours and Belle's after I am gone,*" and she wrote to Mr. Buchan: "I remember I had thought of sending this $600.00 to my Boulder nieces the same as I did the $400. . . . They must not draw the principal while I live, making them sure of the *$1000.00 I intend they would have if they outlive me.*" And again to

Mr. Buchan: "I want to make them even $1000 on the same terms as the $400 certificates they already have as that amount is what I am intending they shall have if they outlive me." The intention was manifest that appellants should have the amount that she intended to give them by her will so placed that they would get it at her death, whatever the condition of her estate might be, and appellants received the six hundred dollar certificate with that intention as to both certificates clearly expressed to them. There is nothing in any of the writings of deceased or in the evidence, that is necessarily inconsistent with our conclusion.

We do not consider it necessary to discuss here any other suggestion or claim made in the briefs. Whether or not the money evidenced by the certificates belonged at the death of deceased to the estate rather than to appellants, appears to be immaterial here. The bank has in fact paid the money to appellants, and the executor has acquiesced in such payment as one in effect made from the estate, the ground of his opposition to any distribution of further money to appellants being that they have thus received the one thousand dollars to which they were entitled under the will.

The decree appealed from is affirmed.

Shaw, J., and Sloss, J., concurred.